E. E. WHITE, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion Filed April 15, 1927.

1. The protection and regulation of the salt water fishing industry of the State is a proper subject for legislative activities.

2. The Legislature may forbid the sale or possession of fish for sale within the State during a close season, although the effect of such legislation may be to prohibit the sale of fish imported from other states.

3. Statutes which are intended to regulate and protect the salt water fishing industry of the State should contain an express provision that its terms shall apply to salt water fish imported from other jurisdiction, if such be the legislative purpose, otherwise the provisions of the Act will be construed as limited to the waters of the State's jurisdiction.

A Writ of Error to the Court of Record for Escambia County; A. G. Campbell, Judge.

Judgment reversed.

*J. McHenry Jones,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

ELLIS, C. J.—White was convicted of having in his possession certain fish, known as "mullett," of a size less than ten inches in length from tip of nose to fork of tail and of buying fish of that description.

The offense was alleged to have been committed in Escambia County, Florida. The evidence as to the buying and having in his possession at the time and place alleged of fish such as described was sufficient as to that feature of the charge.

There is no merit in the point that the evidence was obtained without a search warrant. In fact, the assignments of error based upon that contention are abandoned.

There is but one question presented and discussed. It is whether the purchase of fish such as described and having the same in one's possession in this State is a violation of

the statute where the fish were lawfully acquired in another State.

This question we answer in the negative.

The Act is entitled "An Act to Protect and Regulate the Salt Water Fishing Industry in the State of Florida and to Declare Certain Fresh Waters in this State Salt Waters for the Purpose of this Act and to Define Certain Waters as Salt Waters."

Section 1 of the Act declares it to be unlawful for any person to take, have in his "possession, buy, sell or offer for sale at any time, or unnecessarily destroy any of the fish known" as mullet of less than twelve inches from tip of nose to fork of tail; "provided that mullet of ten inches can be taken in the waters at points located west of the Aucilla River to the Alabama line, provided that silver mullet of a less length than twelve inches may be caught and possessed during the open season."

The Act is designated as Chapter 10123, Laws of Florida, 1925.

It is contended that the Act does not prohibit the shipping into the State of fish such as described in the indictment which were acquired beyond the limits of Florida. Therefore the trial court should not have excluded the proffered evidence of the defendant that the fish which were in his possession of that description were lawfully acquired in the waters of the State of Alabama.

The fisheries are one of the sources of wealth of a State. The fishing industry of a State is therefore a proper subject for legislative regulation and protection. It is the source of a food supply which is drawn from the waters in which under natural processes the food fishes multiply and become a source of wealth to the State.

The Act, as its title indicates, was designed to "Protect and Regulate" the "Salt Water Fishing Industry." It

was evidently the legislative thought that without protection and regulation the industry might be reduced to the minimum of productiveness if not temporarily or permanently destroyed if left to the improvidence of those who on the one hand through a mistaken notion of what constitutes sport go into the fishing grounds of the State and take from its waters quantities of fish out of all proportion to the amenities of the sport so that it becomes tinged with a kind of brutality which finds its satiety only in wanton destruction, or on the other hand if left to the cupidity of those who live and thrive by the industry.

If such was the legislative thought and purpose it constitutes a sufficient reason for the law which should be construed in the light of such purpose. See Payne v. Payne, 82 Fla. 219, 89 South. Rep. 538.

Section 1 of the statute, Chapter 10123, *supra,* provides that it shall be unlawful for any person to have in his possession, buy, sell or offer for sale at any time, any fish known as "mullet" of less than ten inches from tip of nose to fork of tail, provided that "mullets of ten inches can be taken in the waters at points located west of Aucilla River to the Alabama line."

Whether the possession by any one in this State of fish known as "mullet" of a size less than ten inches in length from tip of nose to fork of tail may in view of the statute prohibiting such possession be justified on the ground that such fish were acquired in the waters of another jurisdiction depends upon two propositions. First, whether it was clearly the purpose of the statute to include fish that were imported as an article of commerce from another State and secondly whether if such was the statute's purpose it would be, in so far as it applied to fish imported from another State, such an interference with interstate commerce

as to render the provisions of the Act inoperative in so far as it applies to such commerce.

It may be that the State has no authority absolutely to forbid the importation of fish from another State, but as a means for the effective enforcement of its own statutes it may forbid the sale or possession of fish for sale within the State during a close season, though the effect of such legislation is to prohibit the sale of fish imported from other States. See State v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. Rep. 10, 53 L. Ed. 75; 11 R. C. L. 1045.

Mr. Justice Day, in the above case said: "The object of such laws is not to effect the legality of the taking of game in other States but to protect the local game, in the interest of the food supply of the people of the State. We cannot say that such purpose, frequently recognized and acted upon, is an abuse of the police power of the State, and, as such, to be declared void."

The taking of fish of a certain kind below a certain size may for obvious reasons be considered an injury to the food supply of the people of a state as well as the taking of fish or other game at certain seasons.

It is usual however for such statutes to contain an express provision that its terms shall apply to foreign game or some provision which affords evidence of the Legislature's intention. See 12 R. C. L. 696; Commonwealth v. Hall, 128 Mass. 410, 35 Am. Rep. 387.

An examination of the entire Act shows it to have been clearly the legislative purpose to limit provision to the waters of this State's jurisdiction, and nowhere in any of its provisions is the purpose at all clear that they should include fish or game taken in another jurisdiction.

We therefore conclude that the Court erred in excluding the proffered evidence that the fish were caught in the

waters of another jurisdiction and denying the motion for a new trial.

The judgment is reversed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.