T. R. HODGES, INDIVIDUALLY AND AS SHELL FISH COMMISSIONER OF THE STATE OF FLORIDA, *Appellant*, v. H. L. FILSTRUP, *Appellee*.

Division A.

Opinion Filed November 21, 1927.

*Philip D. Beall* and *John M. Coe,* for Appellant;

*J. McHenry Jones,* for Appellee.

### Statement.

This is an appeal to review a final decree of the Circuit Court of Okaloosa County, Florida, granting a permanent injunction against the appellant, defendant in the court below, T. R. Hodges, Shell Fish Commissioner of the State of Florida, forbidding the seizure and sale or destruction by him of 6,000 pounds of frozen mullet, alleged to have been the property of the appellee, H. L. Filstrup.

C. G. Meigs, a fish dealer, purchased and received possession of 6,000 pounds of mullet on November 30, 1926. The fish were then brought and placed in an ice plant at Niceville, and there frozen into 300-pound blocks of ice. Deputy Shell Fish Commissioner Townsell saw these fish

during the process of freezing, and on the 6th day of December, 1926, seized said mullet, and left them where they were located, in the freezing plant of the Ice and Power Company. A deputy sheriff was with Mr. Townsell at the time of the seizure of the fish and the fish were turned over to the deputy sheriff by him. The sheriff of Okaloosa County claims that Mr. Townsell instructed him to sell the mullet. This Mr. Townsell denies. After turning the fish over to the deputy sheriff, Townsell communicated with the State Shell Fish Commissioner, and on the afternoon of December 7th, he received from him the following telegram:

"17PN AM 49

JM TALLAHASSEE FLO     1252 P DEC 7 1926
WM F TOWNSELL JR

DEPUTY SHELL FISH COMMISSIONER CREST-VIEW FLO SWEAR OUT WARRANT FOR MANAGER ICE PLANT AND ALSO OWNER OF FISH TURN FISH OVER TO SHERIFF FOR SALE AS PROVIDED BY SECTION FIFTY EIGHT TWENTY NINE REVISED STATUTES SUGGEST SHERIFF SHIP FISH ALVAREZ SEA FOOD COMPANY SAVANNAH GEORGIA ON CONSIGNMENT AS WOULD HARDLY BE ABLE SELL AT NICEVILLE.

T R HODGES.
119P"

Townsell testified that he received this telegram late in the afternoon of December 7th, and about dark on the same afternoon he delivered the same to the deputy sheriff. The sheriff testified that he heard nothing about this telegram until several days later, and acting under the authority already received from the deputy shell fish commissioner he sold the fish at public sale down at the dock

near where they were located, on December 8th; that there were quite a few people present and that the only bidder was the appellee, Filstrup, to whom he sold the fish for $1.00 and delivered the purchaser a bill of sale; that at the time he had been informed by the manager of the ice plant that the charges for freezing and storage amounted to about $72.00. Subsequently, Mr. Townsell, Deputy Shell Fish Commissioner, endeavored to seize the fish after Filstrup had thus attempted to purchase them, and also made an effort to have the manager of the ice plant arrested. Filstrup was later arrested for buying the fish from the sheriff. It also appears that the above telegram was not actually delivered to the sheriff until the day after the attempted sale to Filstrup. There was also testimony that it was impracticable, if not impossible, to ship the fish in their then condition, frozen into solid blocks of ice, and that the only way they could be sold to be of any value would be through retail fish houses located nearby. When, after the sheriff's sale, the appellant by his deputies attempted to take possession of the fish this bill for injunction was sued out by Filstrup to prevent him from so doing. The bill claimed that the sale by the sheriff to Filstrup was valid. Upon this bill temporary restraining order issued. Thereafter, on January 7, 1927, respondent filed his motion to dissolve the temporary restraining order, alleging among other things that the bill of complaint was without equity, that complainant did not show title in himself, and that no facts appeared showing threat of irremediable injury. This motion was accompanied by a sworn answer which admitted the seizure on December 6th, admitted that appellant's deputies attempted to take possession of the fish on December 16th, but denying the title of Filstrup and the validity of the sale to him by the sheriff, alleging that the sheriff only had authority to

ship the fish to Savannah, Georgia, for sale; that the sale to Filstrup was merely colorable and void, the consideration being $1.00, whereas the value of the fish was $480.00. Alleging also that the property in the fish was in the State of Florida and that no irremediable injury could come to the respondent through the seizure. Testimony was taken upon this motion to dissolve, and the Court denied the motion. Appellant was allowed to amend his answer so as to include a general demurrer to the bill for want of equity. The matter was brought on for final hearing upon the testimony already taken and copies of the Shell Fish Commissioner's official bonds in the penal sums of $10,-000.00 and $1,000.00 respectively. Final decree was entered making the injunction permanent and the defendant appealed.

BROWN, J.,—(after stating the facts as above):

Section 2 of Chapter 10123 of the Laws of 1925 reads as follows:

"That from and after the passage of this Act it shall be unlawful for any person, persons, firm or corporation to take, have in his or their possession, buy, sell, offer for sale or ship any fresh or freshly salted mullet or mullet roe, in this State between the first day of December of any year and the twentieth day of January of the next succeeding year. The possession of any fresh or freshly-salted mullet, or any fresh or freshly-salted mullet roe, by any person, persons, firm or corporation, during the closed season shall be prima facie evidence of the violation of this Act. Provided, however, that anyone having any fresh or unsplit mullet or roe on hand at the beginning of the closed season may have five days in which to dispose of same.". The proviso in the quoted section of Chapter 10123 is not rendered inoperative in Okaloosa County, because of its omission

from Section 6, Chap. 10527, the local act, approved a few days previous to Chap. 10123. See Sec. 15 of the latter Act. There is in fact no conflict between the two Acts in this respect; especially in view of the provisions of Sec. 15 of the general Act.

"The word "between" means, according to Webster's New International, "In the space which separates, betwixt; as, New York is between Boston and Philadelphia * * In intermediate relation to, in respect of time, quality, quantity, or degree; as between nine and ten o'clock." When the word "between" is used with reference to a period of time, bounded by two other specified periods of time, such as between two days named, the days or other periods of time named as boundaries are excluded. Winans v. Thorp, 87 Ill. App. 297, 298; Fowler v. Rigney (N. Y.) 5 Abb. Prac. (N. S.) 182, 184; Cook v. Gray, 6 Ind. 335, 337; Bunce v. Reed (N. Y.) 16 Barb. 347, 352; Robinson v. Foster, 12 Iowa, 186, 188. "The word 'between', when used in speaking of the period of time 'between' two certain days, generally excludes the days designated as the commencement and termination of such period. People v. Hornbeck, 61 N. Y. Supp. 978, 30 Misc. Rep. 212; Kendall v. Kinglsey, 120 Mass. 94, 95; Weir v. Thomas, 62 N. W. 871, 872, 44 Neb. 507, 48 Am. St. Rep. 241." See 1 Words and Phrases, 766; 7 C. J. 1146.

It will be noted that the closed season for mullet as fixed by the above quoted statute is, "between the first day of December of any year and the twentieth day of January of the next succeeding year." It follows that the closed season begins with the second day of December and closes on the 19th day of the following January—in other words it covers the period between the first day of December and the twentieth day of the following January, but

excludes the dates which are named in the statute as terminii.

It appears, therefore, that Meigs came into lawful possession of the fish involved in this case on November 30th, and that he had five days after the beginning of the closed season in which to dispose of same; that is, he had up to and including December 6th, Therefore, the *seizure* of the fish by the Deputy Shell Fish Commissioner on December 6th was without warrant of law.

The *sale* by the sheriff to appellee Filstrup on December 8th was also unlawful, even if such sale had been made under authority from the Shell Fish Commissioner, upon which the evidence was in conflict. This sale was not based upon a valid seizure, nor can it be justified under Sec. 5829 of the Rev. Gen. Stats. This section provides for the seizure of any vessel and its cargo whose owner, officers or crew are violating the provisions of Sec. 5827, R. G. S., fixing a closed season for mullet, and prescribing a proceedings by suit instituted in the name of the State, by which the vessel and its cargo may be sold and the proceeds paid to the Shell Fish Commissioner or deposited in the State treasury. Clearly this could have no application to the seizure of mullet, frozen in the tanks of an ice factory, for the sale contemplated by the statute is only as an incident to the sale of the vessel, and in this case no vessel was seized nor proceeded against, and it further appears that the mullet were caught in the open season; hence the vessel was not forfeitable.

The conclusion is inevitable that the complainant in the court below, who claims under the sale by the sheriff, did not by that sale, which was entirely without warrant of law and void, acquire any right either of title or possession, which he could have enforced or protected by a court of equity. In fact, the statute above quoted prohibited the

sale of such mullet after the 6th day of December, and even their possession after that date was likewise prohibited. The views above expressed renders consideration of the other questions raised unnecessary.

The order denying the motion to dissolve the injunction and the final decree of the court below are therefore reversed with directions to dismiss complainant's bill.

Reversed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.