THE CITY OF DAYTONA BEACH, Petitioner. v.
P. B. DYGERT, Respondent.

1 So. (2nd) 170
Special Division B
Opinion Filed March 11, 1941

*John R. Parkinson* and *Charles W. Luther,* for Petitioner; *W. W. Judge,* for Respondent.

CHAPMAN, J.—On July 23, 1940, the City of Daytona Beach, Florida, leased its airport for a period of two years to P. B. Dygert, and the material and pertinent portions of the lease are, viz.:

"ONE: The City of Daytona Beach does hereby give in charge, transfers and sets over unto the said P. B. Dygert the use and operation of its municipal airport located at the Western boundary of the territory comprising said City together with any and all of its buildings, hangars, equipment, facilities and appurtenances thereunto belonging, to be operated, controlled and managed by the said P. B. Dygert for a period of two (2) years from the date of these presents, during all of which time the said P. B. Dygert shall have the full right to take, receive, collect, use and utilize any and all rentals of or from any of the buildings, hangars, facilities and/or equipment of, to or belonging to said municipal airport, and any and all income, charges, returns, rentals and other monetary emoluments of or from the operation of said airport including concessions of any and all kinds and descriptions and air-line company rents and rentals, to his own proper benefit and use without decrease, deduction or charge by or from the City of Daytona Beach.

"Two: The said P. B. Dygert agrees to take and operate said municipal airport and to manage, operate and control the same as aforesaid and receive the proceeds and returns thereof as aforesaid for a period of two (2) years as aforesaid in a competent and business-like manner and in a manner conforming to the rule and regulations of the United States Civil Aeronautics Authority.

"THREE: The City of Daytona Beach agrees to keep and maintain all of the physical assets of said municipal airport in a good and sufficient state of repair at its own expense and to furnish any and all materials and equipment necessary and usually furnished and maintained in up-to-date municipal airports and to supply at its own expense all power, water and other utility services necessarily required in and about efficiently operating said airport and its buildings, hangars, offices and equipment, during the life of this contract.

"FOUR: The said P. B. Dygert agrees to expand and develop at his own expense the housing and cage facilities for the wild animals and fowl contained in the zoological garden owned and operated by the said P. B. Dygert at said municipal airport from time to time so that the same will progress to a larger and more extensive attraction for the citizens and visitors of and to said City and to keep the same in a state of good repair and pleasing appearance at all times for the benefit of the public generally, Provided, however, that The City of Daytona Beach agrees to pay the sum of Seventy-five ($75.00) Dollars each and every month during the life of this contract as and for feed costs of the animals and fowl maintained in said zoological garden, and further furnish at the expense of The City of Daytona Beach one (1) employee or attendant whose sole duties, during the life of this contract, shall be to perform such

work as the said P. B. Dygert shall direct at said airport and zoological garden.

"FIVE: It is mutually understood and agreed that the wild animals and fowl and other animals and fowl kept and maintained at said airport zoological garden together with the cages and other housing facilities supplied for them by the said P. B. Dygert shall be and remain the property of the said P. B. Dygert.

"SIX: It is further mutually understood and agreed that the City of Daytona Beach shall have and continue to have, during the life of this agreement, full right and authority to go in, to or upon said municipal airport for the purpose of making any improvement or repairs necessary, expedient or proper at any time and that said City reserves the right to make any agreement and enter into any proper understanding with any department of the United States Government as to the use or occupation of said airport.

"SEVEN: It is further mutually understood and agreed by and between the parties hereto that each and every paragraph of this entire instrument shall be taken and considered as part and parcel of this agreement, and that this contract shall be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto, and each of them, and that the said P. B. Dygert shall have full right and authority to assign this contract and the emoluments thereof by and with the consent of the said City."

The chancellor below, upon the complaint of P. B. Dygert, entered an order restraining the City of Daytona Beach from terminating the said lease or contract of employment and from interfering with plaintiff's possession of the airport, and entered orders (a) denying a motion to dissolve the temporary injunction; and (b) denying a motion to dismiss the bill of complaint. These orders are before the

Court on petition for writ of certiorari under the provisions of Rule 34 of this Court.

Several questions are presented and argued by counsel, but the most important, as we see it, is, viz.: Does the City of Daytona Beach have any power or authority to lease its municipal airport? If the city had the power to enter into the lease, then the petition for a writ of certiorari must be denied. If the city had no power to make the lease, then the agreement, *supra,* at the most is a contract of employment and terminable by the city under certain provisions of its charter, and if this be true the petition for a writ of certiorari should be granted.

Chapter 17708, Acts of 1937, Laws of Florida, grants to the several *counties* of Florida the power to *lease* airports to private parties for a period or term not to exceed ten years. The Legislature granted this power to counties but failed or omitted to clothe the different municipalities of Florida with this power. Chapter 13569, Acts of 1929, Laws of Florida, authorizes municipal corporations to purchase, establish, construct, maintain and operate municipal airports and to expend municipal money raised by taxation incident thereto, but the Act does not grant to or provide a municipality with the authority to enter into a lease with a private party whereby the management and operation of an airport is transferred by the terms thereof from a municipality to a private management.

Counsel for respondents contends that Section 8 of Chapter 19768, Special Acts of 1939, authorized the City of Daytona Beach to make the lease or contract here challenged. Section 8, in part, provides:

"Section 8. . . . To purchase, lease, acquire by eminent domain, receive and hold property, real and personal, within or without the limits or territorial boundaries of said municipality; and to sell, alienate, convey, lease or otherwise

dispose of the same for the benefit and advantage of said municipality; and may purchase, acquire by eminent domain, lease, receive and hold property, real and personal, within or without the limits or territorial boundaries of said municipality; to be used for the burial of the dead; for the erection, construction and maintenance of waterworks and lighting plants; for the establishment of hospitals, poor houses, and houses of detention and correction; for the establishment of docks, wharves, bulkheads, breakwaters and boat basins, public parks, play grounds, golf grounds, fair grounds, airports, seaplane bases, and for such other public purposes as the City Commission may by ordinance or otherwise deem necessary and proper, and may sell, lease, or otherwise dispose of said property for the benefit of said municipality to the same extent that natural persons might or could do, . . ."

The power is granted, *supra,* to acquire, own, hold and dispose of real estate, but no authority is granted to the said city to dispose of property impressed with a public trust. We have involved here an airport owned by the people of the City of Daytona Beach which was constructed at a cost of approximately $500,000.00. If the power or authority to lease this property exists, it must clearly appear by the terms of the city charter or by statutes applicable generally to the several municipalities of Florida. It is well established that if a doubt exists whether a statute authorizes a municipality to exercise certain power, then the doubt should, as a matter of law, be resolved by the courts against said municipality. See Nash v. Vaughn, 133 Fla. 499, 182 So. 827; Williams v. Town of Dunnellon, 125 Fla. 114, 169 So. 631; State v. Tampa Water Works Co., 56 Fla. 858, 47 So. 358, 19 L. R. A. (N. S.) 183; State v. Burr, 79 Fla. 290, 84 So. 61; State v. Fowler, 90 Fla. 155, 105 So. 733.

The City of Coffeyville, Kansas, owned an airport and sub-let the same to a private individual; and the terms of the lease authorized the lessee to operate it for the convenience of all aviators who chose to use it, on reasonable terms named by the lessee, and was to have all the profits flowing from the operation of the airport; and he was required to pay the city for the use of the port the sum of $50.00 per month. The property was leased for a period of five years. See State *ex rel.* Mitchell v. Coffeyville, 127 Kan. 663, 274 Pac. 258, 63 A. L. R. 610. The question squarely presented there was whether or not the City of Coffeyville had the corporate power to sublet its municipally owned airport to a private individual. The Court held that no such power existed and in part said:

"This Court, however, feels impelled to hold that neither the statute just quoted nor any other can by fair intendment be interpreted to confer upon the City of Coffeyville the corporate power to sublet its municipal airport, nor to confer upon a private individual, as lessee of the city, the exclusive privilege of managing the municipal airport for his private profit; and the fact that the lease contemplates that the lessee's charges must be reasonable, and that the aviation services which he undertakes to furnish must be open to all aviators alike, will not excuse the city's exercise of a corporate power for which there is no statutory authority."

It is well established that a municipality can exercise powers only which are expressly granted or which by fair and reasonable intendment are conferred or granted, and if the power to lease or rent an airport to a private individual on the part of the municipality is not fully and clearly granted by legislative enactment, then the said power or authority is withheld and the lease is void for the want of power on the part of the municipality to enter into the said lease.

The above rule is well expressed in Vol. 6, Am. Jur. 14-15, par. 20, viz.:

"20. Lease or Sublease of Airport.—A city which has acquired a municipal aviation field or airport under authority of statute has not, in the absence of express legislative authority, power to sublet such airport to a private individual, or to confer upon a private individual, as lessee of the city, the exclusive privilege of managing the municipal airport for his private profit, even though the city does not find it practicable to conduct and manage the airport itself. Nor will the fact that the lease contemplates that the lessee's charges must be reasonable, and that the aviation services which he undertakes to furnish must be open to all aviators alike, justify such an unauthorized disposition of the airport. However, a municipality may be, and often is, expressly authorized by statute to lease, assign, or sublet part or all of the airport or aviation field acquired by it, although a statute which simply authorizes the governing body of any city to acquire, by purchase or lease, and maintain a municipal field for aviation purposes, and to pay the expense thereof out of the general funds of the city, does not grant such authority. Proceedings of the governing body of a city under such an authorization, looking to the acquisition and subletting of a municipal airport, are not invalid as against the objection that the end to be attained is not of a public character, and that funds of the city to be raised by taxation are to be used to subsidize a private undertaking. The lease need not be made to the highest bidder where such procedure is not required by the terms of the statute." See McQuillin on Municipal Corporations (2nd Ed.), Vol. 3, pages 759-764, par 1247; Stern v. Jersey City, 8 N. J. Misc., Rep. 307, 150 Atl. 9.

Counsel for respondent cites and relies upon Mollencoop v. City of Salem, 139 Ore. 137, 8 Pac. (2nd) 783, 83 A. L.

R. 815; Coleman v. City of Oakland, 110 Cal. App. 715, 295 Pac. 59; City of Mobile v. Lartigue, 23 Ala. App. 479, 127 So. 257, 2 C. J. S. Aerial Navigation, Sec. 37. We have examined these authorities and observe that they hold that the ownership, operation and maintenance by a municipality of an airport is either a governmental or proprietary function of government. This is not the pivotal or dominant question in the case at bar.

Our conclusion is that the City of Daytona Beach does not possess the necessary charter power or authority to enter into a lease or instrument subletting the $500,000.00 airport owned by said city to a private individual and that the orders issued on the part of the chancellor below restraining the said city from terminating the alleged lease or contract and overruling and denying the motion to dismiss the said bill of complaint were each erroneous.

The petition for a writ of certiorari is hereby granted as prayed for and the orders granting the temporary injunction and overruling the motion to dismiss made by the City of Daytona Beach and directed to the bill of complaint are each quashed.

It is so ordered.

BROWN, C. J., WHITFIELD and TERRELL, J. J., concur.