WIGGINTON, Justice.
Plaintiff has appealed from a final decree entered after a trial on the merits by which the relief prayed in its complaint was granted in part and denied in part. Appellant questions the correctness of that provision of the final decree which holds that under the circumstances presented by the evidence the picketing by defendant labor union of the job sites at which plaintiff was working pursuant to valid contracts was lawful and did not warrant the injunctive relief prayed by plaintiff.
The evidence adduced by the parties at the trial before the chancellor is not in substantial dispute. Wesley of Florida, Inc., and Fred S. Conrad Construction Company each are general contractors whose principal places of business are located in Jacksonville, Florida. Each of them have collective bargaining agreements with the local labor unions of the various crafts employed in connection with their respective businesses, and each employ union labor pursuant to those agreements. One of these general contractors was awarded contracts to construct two high school buildings in Du-val County, and the other was awarded contracts to construct three other school buildings in that locality.
Both Wesley and Conrad entered into agreements with Florida Weather, Inc., whereby the latter was awarded subcontracts to perform the mechanical work on all five projects. The mechanical work consists of furnishing labor and material for those portions of the general contracts *4 which include heating, plumbing and air conditioning. Florida Weather also maintains a collective bargaining agreement with local labor unions covering those crafts utilized in connection with its business, and employs union labor in the performance of its work. The contracts between Wesley and Conrad as general contractors, and Florida Weather as subcontractor, provide in essence that the work to be performed by Florida Weather shall be prosecuted diligently in a manner so as not to interfere with or cause delays, and should Florida Weather cease to perform on account of labor troubles caused by crafts employed by it, then the general contractors may take over the subcontractor’s men, material and equipment and complete the work covered by the contract. It is further provided that any cost of completing the work in excess of the contract prices would be paid by Florida Weather.
After securing contracts for the mechanical work on the five school building projects, Florida Weather subcontracted to Hescom, Inc., the plaintiff in this case, the construction and installation of the metal ducts needed for completion of the air conditioning and heating systems. Hescom is engaged in the sheet metal business at Jacksonville, but for some time prior to obtaining the contracts in question had declined to enter into a collective bargaining agreement with defendant labor union. The journeymen sheet metal workers employed by it in connection with its business are not affiliated with defendant labor union. The evidence reveals that in past years Hescom was a party to collective bargaining agreements with defendant labor union, but after the expiration of its last agreement has declined to enter into any subsequent contracts. The evidence further reveals that Hescom’s employees at one time were members of the defendant labor union, but have now withdrawn and no longer maintain an affiliation with that organization. All the contracts between Florida Weather and Hescom provide that the work contracted therein must progress in such manner as not to delay construction, and that if any labor trouble develops due to the action or non-action of Hescom or its employees, it becomes Hescom’s responsibility to take such steps as may be necessary to progress the work in an orderly and expeditious manner.
After Florida Weather awarded Hescom the subcontract above mentioned, defendant Stalvey, as business agent for the local union, called on the president of Florida Weather and attempted to persuade him not to enter into any contract relations with Hescom because the latter did not have a collective bargaining agreement with the local union and did not employ union journeymen in its work. Upon Florida Weather’s refusal to comply with this request, Stalvey warned that he would cause Florida Weather trouble in the performance of its subcontracts.
After work on the school house projects commenced Stalvey, acting on behalf of the local union, filed a complaint with the Local Joint Adjustment Board pursuant to the contract then in effect between the local union and Florida Weather in which the latter is charged with having violated the terms of its contract by having subcontracted part of its work to Hescom who does not have a collective bargaining agreement with the local labor union. The Local Joint Adjustment Board deadlocked in its consideration of the question as to whether the subcontracts by Florida Weather to Hescom violated the terms of the agreement. In accordance with the procedure set forth in the agreement, the question was then appealed by the union to the National Joint Adjustment Board for decision. In disposing of this controversy the chancellor found and concluded that the provision of the collective bargaining agreement in question did not prohibit subcontracting by Florida Weather, and that the latter had a legal right to enter into the subcontracts with Hescom to furnish the air conditioning ducts for the five school building projects in question. This ruling is not assigned as error on this appeal.
*5 While the local union’s appeal to the National Joint Adjustment Board was pending, the union caused a picket line to be established around the five job sites at which construction on the school buildings was then in progress. The testimony reveals that the union’s announced purpose of establishing these picket lines was to inform the public that plaintiff Hescom did not employ in its business members of the local sheet metal workers union. The grievance appearing on the signs and placards displayed by the picketers was not directed against Florida Weather with whom the proceeding regarding the alleged contract violation was pending, but was directed solely and exclusively against Hescom the sub-subcontractor. Picketing was conducted in a peaceful and orderly manner, and the evidence affirmatively shows that no violence or threats of violence resulted therefrom.
Upon the establishment by defendant labor union of the picket lines around the job sites, the union members of other crafts employed in the construction of each school building walked off the job and refused to cross the picket lines. As a result the progress of the work on each school building immediately came to a standstill. The general contractors thereupon notified Florida Weather that the progress of their work was interrupted due to a labor dispute between defendant labor union and Florida Weather’s subcontractor Flescom, and warned that unless the dispute was promptly settled by removal of Hescom and its employees from the projects, that Florida Weather’s contract would be cancelled in accordance with its terms and provisions relating to this contingency. It was only because of the general contractors’ threat to cancel Florida Weather’s subcontract that it in turn was forced to demand that Hescom remove its employees from the site of the several projects then under construction, and to cease work on that part of its subcontract which involved the construction and installation of the air conditioning ducts. Hescom complied with the demands of Florida Weather and withdrew its employees from the several job sites. The evidence reveals that unless Hescom is permitted to complete its contracts with Florida Weather, its employees will lose 4,800 man hours of work and Hescom’s business will suffer proportionately. As a result of the disruption caused by the Union’s action in picketing the construction projects on which Hescom was working, Florida Weather as well as other contractors in the Duval County area have refused to accept bids from Hescom for sheet metal work required to be done under new contracts, and have refused to consider employing Hescom as a subcontractor in connection with any of the work for which Hescom and its employees are qualified.
By his decree the chancellor concluded that the labor union’s picketing of the several job sites was legal in view of the fact that the only evidence of activities by either defendant Stalvey or defendant Local Union No. 43S was the filing of charges alleging a breach of the collective bargaining agreement by Florida Weather, and the peaceful picketing of the job sites. It was because of this conclusion that the chancellor decreed that plaintiff was not entitled to injunctive relief as prayed in its complaint.
In the Fontainebleau Hotel case[1] our Supreme Court pointed ou that the right to picket is an aspect of freedom of speech and may not be infringed. This is not to say, however, that picketing by any group, whether organized or not, is without limitations. The foregoing decision, in elaborating on the limitations upon the right to picket, states:
“ * * * It cannot be initiated, however, for spite or for reasons other than to accomplish a lawful purpose and then the law, order and decency require that it be done in an atmosphere con *6 ducive to reaching a result that is fair to the employer, the employees and the public. If attempted in an atmosphere of violence, insinuation, bad faith, deception, farce or damned — if I — don’t show — -you spirit, it should not be recognized as a means of adjusting labor disputes. Satisfactory, fair or equitable judgments never emerge from such an atmosphere. Picketing conducted in such an environment, as we stated in Sax Enterprises v. Hotel Employees Union, Local No. 255, supra [Fla., 80 So.2d 602], is nothing more than a ‘ “species of coercion traveling under the guise of [free] speech for the purpose of enjoying constitutional immunity.” ’ ”
From the foregoing decision it seems apparent that for picketing to be considered lawful, it must not only be conducted in a peaceful and non-violent manner, but its purpose must be to accomplish a lawful objective. The rationale of the decision rendered by the Supreme Court in the Stonaris case[2] is to the effect that even though picketing is conducted in a peaceful manner, it will be considered unlawful and subject to restraint by injunction if its purpose or effect is to accomplish an unlawful objective. The foregoing rule was again emphasized by the Supreme Court in the Treasure, Inc., case.[3] It was there held that even though picketing is peaceful, if the purpose or the reason is illegal, then it may be enjoined. It thus appears that legality of the objective sought to be attained is an indispensable ingredient of lawful picketing. This requirement must be met irrespective of tile identity of the group engaged in such activity, the cause they espouse, or the grievance they seek to demonstrate.
In the case sub judice the evidence reveals, and the chancellor found, that the picketing of the five school house construction sites by defendant Union was peaceful and free from violence or threats thereof. It does not necessarily follow however, as concluded by the chancellor, that merely because the picketing was peaceful that it was therefore legal. The legality of the objective sought to be accomplished which motivated the picketing in this case is the crucial question presented by this appeal. If the purpose was to attain a lawful objective, then it must be held to have been lawful as found by the chancellor. If on the other hand the purpose which motivated the picketing was not to attain a lawful objective, the picketing must be held to have been illegal and subject to injunctive restraint on the proof adduced by the plaintiff at the trial.
Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A., provides inter alia that:
“ * * * The right of persons to work shall not be denied or abridged on account of membership or nonmember-ship in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer.”
In commenting upon the foregoing provision of the Constitution, and those statutes enacted by the Legislature in implementation thereof[4] our Supreme Court in the case of Local Union No. 519[5] said:
“By these provisions of the Constitution and the statutes the public policy of *7 the State of Florida with respect to labor activities and labor opportunities has been set forth and defined. Under these provisions it is the declared public policy of the State that all working men, whether union or non-union, shall be considered on an equal footing with respect to labor opportunities. They are guaranteed complete freedom of decision in whether to join or refrain from joining any labor organization. No person or organization may deny them the right of obtaining or retaining employment, nor may the right be abridged, by reason of membership or nonmembership in any labor organization. They are not to be coerced or intimidated in the enjoyment of their legal rights, including the right of free decision as to whether or not they will join a union, and any person or labor organization who so coerces or intimidates them is to be deemed guilty of a crime punishable by fine or imprisonment, or both.”
In his testimony before the court defendant Stalvey, as business agent of the defendant local labor union, candidly admitted that had Hescom entered into a collective bargaining agreement with the local union and agreed to employ only members of that union in the prosecution of his work that the dispute in this case would never have arisen. It seems apparent from this testimony that the only grievance which the labor union has against Hescom is its failure or refusal to bargain collectively with it, and to employ in its work only union labor. It was for the purpose of demonstrating this grievance that the union established picket lines around the five job sites upon which Hescom and its employees were working. The question thus presented for our decision is whether the underlying reason for picketing by the labor union was for the accomplishment of a lawful objective.
In the case of Local Union No. 519, supra, the plaintiff was a contractor employing only non-union men in the prosecution of his work. The job sites on which the plaintiff was fulfilling lawful contracts were picketed by members of the labor union who exhibited signs and placards stating that plaintiff was unfair to the union. The picketing was conducted in an admittedly peaceful manner. The plaintiff contended that the sole purpose of the union in picketing his job sites was to force him to enter into a collective bargaining agreement with it and to force his employees to join the union, all contrary to the guarantees afforded by the “right to work” amendment contained in the Declaration of Rights of our Constitution. The labor union admitted that the objective it sought to attain was as contended by plaintiff, but urged that this was for a lawful purpose in the lawful exercise of the right of freedom of speech guaranteed by the Federal and State Constitutions. In affirming the decree enjoining the union from further picketing the job sites on which plaintiff was working the Supreme Court said:
“In the face of the fixed public policy of this State as asserted in the constitutional provision and statutes we have quoted, the defendant union sought a closed shop contract from an employer who did not wish to employ union labor exclusively, and whose employees were perfectly satisfied with the wages, hours and conditions under which they were working and had no desire to become affiliated with the union or to designate it as their bargaining representative. The defendant union, failing in its efforts to secure such a contract amicably, resorted to picketing a construction job upon which the employer was under contract to install plumbing equipment and -fixtures, not for the purpose of bettering the wages, hours or conditions under which the employees were working (for the union admittedly had no dispute with the employer on that score) but for the sole purpose of coercing the employer into signing a closed shop contract to which he did not want to become a party and *8 which would necessarily require him in its performance either to discharge his nonunion employees or compel them as a condition to further employment to become members of the union.
'“We can think of no situation more repugnant to the spirit of the declared public policy of the state than this, nor •one more likely to appeal to the considerations of a court of conscience.
^ ‡ % jJ; ;Ji ‡
“Under these circumstances we think that the chancellor acted correctly in entering the injunctive decree appealed from. The fact that the picketing being conducted by the union was peaceful can have no effect upon our conclusion. A state is not re--quired to tolerate in all places and situations picketing by an individual, or group of individuals, for even peaceful picketing is not beyond legislative control.”
A similar conclusion was reached by our Supreme Court in the subsequent case of Stonaris, supra. It was there held that an employer may not be subjected to picketing by a labor union, even in a peaceful manner, if the purpose is to require the employer to discharge a non-union employee and to employ only members of the local union. The objective sought to be accomplished by such picketing was held to be unlawful and subject to injunctive restraint. A similar result was reached by the Supreme Court in the later case of Treasure, Inc., supra.
On the basis of the foregoing authorities we feel the conclusion is inescapable that the purpose which motivated Stalvey and the local union in this case to picket the five job sites on which Hescom and its employees were working was to accomplish an unlawful objective. While it is true that neither the union nor its representative directly communicated with Hescom in an attempt to persuade it to enter into a collective bargaining agreement with the union and to employ only union labor, and while the evidence fails to reveal any threats directly communicated to Hescom by the union or its representative, the technique employed by the union conveyed the message in a more subtle but no less effective manner. The union knew beyond question that if it placed a picket line around the job sites on which Hescom and its employees were working, the well established and judicially noticed practice of other union members working on the project to honor the picket line and refuse to cross it would be followed. The union likewise was fully aware that when this happened work on each project would immediately cease, thereby coercing the general contractor to take such steps as may be necessary to have Hescom and its employees withdrawn from the projects and the work that they were doing placed in other hands. The inevitable result of establishing the picket lines was to knowingly force Hescom into following one of two alternatives. It could either submit to a cancellation of its contracts on the five construction projects, thereby depriving its employees of a substantial amount of work which they were qualified to perform and causing irreparable injury to Hescom itself, or it could capitulate and enter into a collective bargaining agreement with the union, thereby forcing its employees to join the union and submit to its jurisdiction. Under these circumstances picketing at the several job sites by the defendant union was not legal as found by the chancellor, but must be held to have been an illegal act and conducted for the accomplishment of an objective prohibited by the public policy of this state as guaranteed by the constitution and statutes adopted by the Legislature.
In the recent case of Schermerhorn v. Local 1625 [6] our Supreme Court was called *9 upon to make a determination as to whether an “agency-shop” provision of a collective bargaining agreement was illegal as violative of the “right to work” amendment of the Declaration of Rights. The questioned provision of the contract required the employer to force its non-union employees to pay the union representing their craft the equivalent of a union initiation fee, and to submit to a deduction from their wages an amount of money equivalent to the dues which union employees pay periodically to their local union. In interpreting the spirit and intent of the “right to work” amendment to the Constitution, the Supreme Court said:
“This section clearly bestows on the workingman a right to join or not to join a labor union, as he sees fit, without jeopardizing his job. Inasmuch as the Constitution has granted this right, the agency shop clause is repugnant to the Constitution in that it requires the non-union employee to purchase from the labor union a right which the Constitution has given him. The Constitution grants a free choice in the matter of belonging to a labor union. The agency shop clause contained in the contract under consideration purports to acknowledge that right, but in fact, abrogates it by requiring the nonunion worker to pay the union for the exercise of that right or, in the alternative, to be discharged from his employment. Such an arrangement is palpably and totally inconsistent with the freedom of choice contemplated by our Declaration of Rights, Section 12.
jf: ‡ jjc ‡
“ * * * Clearly, it is the intent of this section to leave as a matter for individual determination and preference the question of whether the worker will derive any benefit from association with a labor union. The choice is his to make. Presumably, the appellants in the instant case have decided that union membership is not an overall benefit to them personally, else they would have joined.”
The rationale of the foregoing decision is to hold that a labor union may not do indirectly that which the law prohibits it from doing directly. By analogy we are impelled to conclude in the case now before us that the defendant union may not through the technique of peaceful picketing precipitate a condition which by indirection has the effect of forcing an employer to enter into a collective bargaining agreement with it and compel its employees to join the union against their will, an objective which the rulings of our Supreme Court have held to be illegal as violative of an individual’s right to work in a lawful occupation or trade. As said by the Supreme Court in the Paramount Enterprises case:[7]
“Personal liberty and private property are fundamental rights in this country. The very purpose of law is to protect these rights. Any unlawful interference with them by false statement, acts of coercion, intimidation, malice, or covert implications that threaten mischief or injury to them may be enjoined.”
To judicially sanction the act of a labor organization which by premeditated design either directly or indirectly denies a person the right to work because of his non-membership in a labor union would negate and render impotent the guarantees contained in Section 12 of the Declaration of Rights of our State Constitution. Any such rule of law would be contrary to the public policy of Florida as determined by its citizens and their duly elected representatives in the State Legislature.
For the reasons and upon the authorities above cited we hold that the chancellor erred in concluding that the picketing conducted by the defendant union in this case *10 was legal. Therefore that part of the decree so finding is reversed and the cause remanded with directions that an amended decree be rendered enjoining the defendant union, and all others acting in concert with it, from picketing the job sites of the five school house projects on which Hes-com has contracts with Florida Weather to build and install the air conditioning ducts.
Reversed and remanded.
CARROLL, DONALD, K., C. J., and RAWLS, J., concur.

. Fontainebleau Hotel Corp. v. Hotel Employees Union (Fla.1957), 92 So.2d 415.

. Stornaris v. Certain Picketers etc., et al. (Fla.1950), 46 So.2d 387.

. Treasure, Inc. v. Hotel and Restaurant Employees and Bartenders’ Union (Fla.1954), 72 So.2d 670.

. F.S. Section 447.01, F.S.A. ; F.S. Section 447.03, F.S.A. ; F.S. Section 447.09, F.S.A. ; F.S. Section 447.11, F.S.A.

. Local Union No. 519 of United Ass’n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of United States and Canada v. Robertson, (Fla.1950), 44 So.2d 899.

. Schermerhorn et al. v. Local 1625 of Retail Clerks Int. Ass’n et al. (Fla.1962), 141 So.2d 209.

. Paramount Enterprises, Inc. v. Mitchell et al. (Fla.1932), 104 Fla. 407, 140 So. 328.