**MIAMI WATER WORKS LOCAL NO. 654**, an unincorporated association, v. **THE CITY OF MIAMI**, a municipality of the State of Florida.

26 So. (2nd) 194                              January Term, 1946
May 24, 1946                                            En Banc
Rehearing denied June 11, 1946

*Rosco Brunstetter,* for appellant.

*J. W. Watson, Jr., Franklin Parson,* for appellee.

*J. Tom Watson,* Attorney General, and *Sumter Leitner,* as amicus curiae.

SEBRING, J:

Miami Water Works Local No. 654 is a labor union affiliated with the American Federation of Labor. The membership of the Union is composed of employees of the City of Miami in the Department of Water and Sewers. The Union has instituted suit in the Circuit Court of Dade County, Florida, for a declaration of its rights in its relationships with the City. The Court below has granted a motion to dismiss the bill of complaint and the plaintiff has appealed from this ruling.

The bill of complaint in the case alleges that for over a period of approximately one year the Union, through its officers and members, has made demands upon the City for recognition as a labor union group invested with authority to bargain collectively with the City through representatives of its own choosing, and to engage in concerted activities for the purpose of such collective bargaining activities or other mutual aid or protection; but that the City officials have refused to deal with the Union, on the ground that to do so would constitute a violation of the City charter. It is further alleged that "members of the plaintiff Union have been coerced and intimidated because of their membership in plaintiff, and have reason to fear that they may be discharged and separated from their employment with the City because of their membership in the Union." It is prayed in the bill that the court find and declare that Chapter 21968, General Laws, 1943, requires the City of Miami to accord to the Union collective bargaining rights in the matter of wages, hours of labor, and conditions of employment with reference to its members; that the court find and declare that under the Constitution of Florida the right of collective bargaining is secured to the Union and that the City is forbidden from discriminating against its members because of membership in the Union; and finally, that an order be entered requiring

the City of Miami, through its governmental officials, to accord to the Union and its members the rights, privileges and immunities to which they are entitled under the law.

The charter of the City of Miami contains no provision which even remotely suggests that the duly elected or appointed officials of the City are under an obligation or duty to consult with the plaintiff union, or anyone else, in determining fitness for employment or promotion, or in fixing hours, wages, or conditions of employment of its employees. Indeed, all provisions of the charter are impliedly to the contrary. All employees of the City are under a civil service system established and created by Chapter 19981, Special Acts, 1939, as amended by Chapter 21385, Special Acts, 1941, Laws of Florida. See sections 60 to 71, inclusive, Charter of the City of Miami.

The civil service of Miami is divided into two classes—unclassified and classified service. The unclassified service includes the city manager, his secretary, heads of departments, members of appointive boards, judges of the City court, city clerk, chief of police, and the chief of the fire department. The classified service includes all other employees in the service. The classified service is divided into the competitive class, which includes all positions and employments for which it is practicable to determine the merit and fitness of applicants by competitive examinations; the non-competitive class, which consists of employment for all positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional, or educational character; and the labor class, which comprises ordinary unskilled labor. Under a code of rules and regulations required to be promulgated by the civil service board and approved by the City Commission, all employment, appointments and promotions in all positions of the classified service are determined on the basis of merit, efficiency, character and industry. The salaries of the employees in the civil service are required to be fixed by the City Commission and an appropriation made for this purpose after a public hearing. Unless it can be said that Chapter 21968, General Laws of Florida, 1943, was intended by the Legislature of Florida to constitute an alteration of

the existing City Charter so as to require the City of Miami to recognize the appellant union as an agency with which it must deal or negotiate concerning the matter of its employees, the lawful duty of the City to follow such course against its own wishes does not exist.

Chapter 21968, supra, is a general law regulating the affairs and activities of labor unions and their members. in the State of Florida. It contains no reference to the City of Miami, or its employees, or to the special acts of the legislature by which the City of Miami was created or its charter approved and established. Hence, if Chapter 21968, supra, is to be taken as an amendment to the present Miami Charter it must be held to have become effective for such purpose solely by implication. It is an elementary proposition that amendments by implication are not favored and will not be upheld in doubtful cases. Before the courts may declare that one statute amends or repeals another by implication it must appear that the statute later in point of time was intended as a revision of the subject matter of the former, or that there is such a positive and irreconcilable repugnancy between the law as to indicate clearly that the later statute was intended to prescribe the only rule which should govern the case provided for, and that there is no field in which the provisions of the statute first in point of time can operate lawfully without conflict. See Ferguson v. McDonald, 66 Fla. 494, 63 So. 915; Sanders v. Howell, 73 Fla. 563, 74 So. 802; Town of Hallandale v. Broward County Kennel Club, 152 Fla. 266, 10 So., (2nd) 810.

As has been noted, Chapter 21968, supra, is a general law regulating the affairs and activities of labor unions and their members. Under the act a labor organization is defined as "any organization of employees, local or subdivision thereof having within its membership residents of the State of Florida, whether incorporated or not, organized for the purpose of dealing with employers concerning hours of employment, rate of pay, working conditions or grievances of any kind relating to employment." See Section 2(1). By section 3, Union employees are given "the right to self-organization, to form, join, or assist labor organizations, to bargain

collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." The statute impliedly authorizes union employees to stage a strike or walk-out when such action has been agreed to by a majority vote of the employees to be governed thereby; and to picket in the area of the industry within which a labor dispute arises. See Section 9 (3, 12).

Chapter 21968, supra, was doubtless intended by the framers to be a complete treatment of the subject matter of labor unions and labor union activities within the State. But we think that a careful consideration of the statute reveals that it was meant to be operative only in the field of *private* business and industry. It contains no expression of purpose to regulate employment in government. The statute, in its declaration of state policy speaks of the necessity for regulating labor unions "as affecting the economic conditions of the country and the state, entering as they do *into practically every business and industrial enterprise . . . "* See Section 1. The Statute authorizes collective bargaining. It deals with striking and picketing. It prescribes penalties for seizing or occupying property unlawfully during the existence of a labor dispute; of picketing by force and violence, or *in* such a manner as to prevent ingress and egress to and from any premises; and of picketing beyond the *area of the industry* within which a labor dispute arises. See Sec. 9 (12). These terms are entirely familiar terms in today's pattern of economic and industrial strife in the field of private enterprise, but they are strange and incongruous terms when attempted to be squared with the governmental process as we know it, or when projected into the field of municipal legislation. The City of Miami is a governmental entity created by the state. It derives its powers and jurisdiction from the sovereign authority. It is limited to the exercise of such powers as are expressly granted to it by the state, or as are necessarily and fairly implied in or incident to the powers expressly granted. See Porter v. Vinzant, 49 Fla. 213, 38 So. 607, 111 Am. St. Rep. 93; City of Daytona Beach v. Dygert, 146 Fla. 352, 1 So. (2nd) 170, 133 A.L.R. 1237; State v. Keller, 129

Fla. 276, 176 So. 176. It is a public institution designed to promote the common interests of the inhabitants in their organized capacity as a local government. Its objects are governmental, not commercial. Created for public purposes only, it has none of the peculiar characteristics of a private enterprise maintained for purposes of private gain. Hence it has no "business and industrial enterprise" for its employees to "walk out" of. It has no "area of industry" within which, or without which, picketing may or may not be lawful. It has no authority to enter into negotiations with the labor union, or any other organized group, concerning hours, wages, or conditions of employment, and to make such negotiations the basis for fiscal appropriations. After such appropriations have been made by ordinance the city officials have no authority to deviate from the budget, even though pressure from organized groups may be brought to bear against them. While strikes are recognized by the statute to be lawful under some circumstances, it would seem that a strike against the city would amount, in effect, to a strike against government itself—a situation difficult to reconcile with all notions of government.

The charter of the City of Miami contains a complete plan or scheme for fixing hours, wages, and conditions of employment and for protecting employees from arbitrary discharge from employment. We find no evidence from a study of the general statute involved that the legislature intended to scrap or junk that plan, or to engraft thereon new rules of action so entirely foreign to the present structure. Had the lawmaking body intended to accomplish such a purpose in a field to important to the State as is the field of municipal legislation there is no reason to believe that it would not have said so in that many words, instead of leaving the matter to sheer speculation and conjecture. We therefore hold that Chapter 21968, General Laws of 1943, did not operate as an amendment, either directly or by implication, of the prior local law establishing the Miami City Charter; and that there is nothing in the present Charter which places upon the City the legal duty to recognize the union for the purposes of collective bargaining.

The appellant next submits that the right of collective bargaining is given the appellant union under Section 12, Declaration of Rights of the Constitution, and that the court should declare that such section is binding upon the municipality. Section 12, so far as pertinent here, reads as follows: "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer." It will be observed that this section of the Constitution does not give the right of collective bargaining to any group. The proviso of the section is merely an expression of the popular will that if the right of collective bargaining is given, an assertion of the rights contained in the main clause of the section shall not operate to deny or abridge the right to bargain collectively. We have seen that Chapter 21968, supra, does not give the union the right to bargain collectively with the City. Neither is the right given by the National Labor Relations Act, as under that statute the United States and all states and political subdivisions thereof are expressly exempted from its operation. See 29 U.S.C.A. Paragraph 152; July 5, 1935, c. 372, Paragraph 2, 49 Stat. 450. Section 12, Declaration of Rights, therefore, is not applicable under the facts of the case at bar.

It is finally contended that by reason of the protection afforded employees by the terms of Section 12, Declaration of Rights, the City of Miami may not discriminate against employees because of membership in the appellant union. This is not an issue that may be raised in a suit brought up by the union. Before a party may secure a declaration of rights under the declaratory judgment statute, it must appear that the question raised is real and not theoretical, and that the party raising it has a bona fide and direct interest in the result. See Sample v. Ward (Fla.) 23 So. (2nd) 81; Ready v. Safeway Rock Co. (Fla.) 24 So. (2nd) 808. That is not the case here.

Appellant has asked for a declaration of its rights on

certain other points which we have not discussed and we deem them outside the scope of the relief to which the appellant is entitled in this litigation.

The decree appealed from should be affirmed.

It is so ordered.

CHAPMAN, C. J., TERRELL, BROWN, THOMAS and ADAMS, JJ., concur.

BUFORD, J., dissents.

BUFORD, J., dissenting:

I am unable to concur in the opinion and conclusion reached in the opinion prepared by Mr. Justice SEBRING.

It is my view that in the operation of its waterworks system the City acts in its proprietary or corporate capacity and not in its sovereign governmental capacity; that in the performance of such activity the City is bound by the same laws and burdened with the same duties toward its employes in that activity as may be applicable to any persons or private corporation when engaged in like activity. See Loeb v. City of Jacksonville, 101 Fla. 429, 134 So. 205; Chardoff v. City of Tampa, 102 Fla. 501, 135 So. 457; Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 220; City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744 and cases there cited.

I see nothing in the provision of the City Charter applicable here which is in conflict with the provisions of Chapter 21968 General Acts of 1943. There is no reason why the municipal authorities may not bargain with the employees collectively through their duly elected representative just as effectually as they could bargain with each employee separately.

There is no attempt to direct what sort of a contract shall be made or what its terms shall be.

A matter involving the legal principles under consideration here was before the Supreme Court of Maryland in the case of Mugford et al. v. Mayor and City Council of Baltimore et al., _____ Md. _____, 44 Atl. (2) 745. There the court dealt with these questions at considerable length and reached the conclusion that collective bargaining between a union and a municipality functioning in its proprietary capacity is lawful

454

when the contract resulting from such bargaining is within lawful limits.

It is my view that the allegations presented by the second amended bill of complaint were sufficient to warrant application for declaratory judgment under our holdings in Sample v. Ward, 156 Fla. 210, 23 So. (2nd) 81 and Ready v. Safeway Rock Co., 157 Fla. 27, 24 So. (2nd) 808.

Therefore, the order dismissing the bill should be reversed.