157 So.2d 176 (1963)
DADE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA, ET AL., APPELLANTS,
v.
AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY & MOTOR COACH EMPLOYEES OF AMERICA ET AL., APPELLEES.
AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY & MOTOR COACH EMPLOYEES OF AMERICA ET AL., APPELLANTS,
v.
DADE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA, ET AL., APPELLEES.
Nos. 62-137, 62-639.
District Court of Appeal of Florida, Third District.
November 1, 1963.
Rehearing Denied November 22, 1963.
*177 Darrey A. Davis, County Atty., for Dade County.
Cowart, Dollar & Glassford, Miami, Mozart G. Ratner, Washington, D.C., for Amalgamated Ass'n.
Before HORTON, TILLMAN PEARSON and HENDRY, JJ.
PER CURIAM
We here review two appeals from the same final decree.[1] The cause was initiated in the circuit court by a complaint for declaratory decree in which Dade County and the Metropolitan Dade County Transit Authority (a governmental entity of Dade County) sought judicial determination of the status of the County as related to the Amalgamated Association of Street, Electric Railway and Motor Coach Employees in the operation of the Transit Authority.
The final decree declared the rights of the parties as follows:
"1. From the testimony presented and the documentary evidence presented, this Court finds that in the event the plaintiffs take over the public utility (pursuant to contract in evidence in this cause) now owned and operated by private person, firm or corporation, said person, firm or corporation will *178 maintain, based upon circumstances presently reflected by this record, a substantial financial or operating control. Therefore, the defendant union and its members are excluded from the operation of F.S. 839.221 (and the plaintiffs are not barred from employing the membership of the defendant union).
"2. Plaintiffs are not required by law to offer employment to the members of the defendant union, and the members of the defendant union would not by operation of law (Sub-Section (4) of F.S. 839.221) be included in classified Civil Service and other benefit provisions and systems of Metropolitan Dade County, Florida, upon consummation of the contractual transaction evidenced by the record in this cause.
"3. Plaintiffs are not authorized by law to enter into a collective bargaining agreement with defendants and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause.
"4. Plaintiffs are not authorized to recognize as lawful any strike directed against them and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause."
Dade County and the Transit Authority appeal from certain portions of the resultant decree, while the bus operators' union appeals from others. The facts giving rise to the issues here involved are complex and lengthy, but must of necessity be set forth.
In order to accomplish the objective of establishing and developing a unified mass transit system under County ownership, the Board of County Commissioners enacted Ordinance No. 60-23 creating the Metropolitan Dade County Transit Authority as an agency of the County government, with exclusive jurisdiction in respect to the operation and maintenance of all transit systems acquired by the County subject to policies established by the County Commission. On May 17, 1961, the County agreed to purchase the bus transportation system owned by W.D. Pawley through the purchasing of all of the capital stock of four transit companies for an agreed purchase price of $7,705,274. This purchase price was to be paid through the use of revenue bonds of the County, issued in part to Mr. Pawley, pursuant to a Trust Agreement, and payable only from net revenues derived by the County from the operation of its newly acquired transit system. Subsequent to the above agreement, a so-called Supplemental Agreement providing for deferment of payment of a part of the purchase price and an Agreement for Delivery of Possession of Transit System were entered into. By the latter agreement the County was granted the right, at its option, to take possession and become the owner of the transit system prior to the delivery of the revenue bonds.
In furtherance of its aim of securing a county-wide bus transit system, the Board of County Commissioners by Ordinance No. 61-44 authorized the issuance of Dade County Transit System Revenue Bonds in the principal amount of $9,000,000, with interest not to exceed 5 percent a year, to provide funds for payment of the purchase price, construction of a central garage and office building, and to provide initial working capital for the County's operation of the transit system. In addition, the Ordinance authorized the execution of the Trust Agreement noted above, securing the payment of the revenue bonds.[2]
In view of these actions, the bus operators' union requested the County to (1) *179 recognize said union as the exclusive bargaining agent for all county employees utilized in operating the transit system, (2) enter into a collective bargaining agreement covering these employees, and (3) to assume the existing collective bargaining agreement.
By resolution of November 21, 1961, the County Commission directed the County Attorney to institute appropriate litigation in order to secure judicial determination of the questions of law and matters of controversy raised by the Union concerning County recognition of the Union as bargaining agent for all transit employees and the proposed collective bargaining agreement. Pursuant to this resolution, complaint for declaratory decree was filed. The County sets forth therein that the established policy of the State of Florida prohibits any governmental entity from entering into a collective bargaining agreement with a labor union or negotiating with a labor union regarding wages, hours, and conditions of employment. Also placed in controversy was the right of these employees to strike and the effect thereon of § 839.221, Fla. Stat., F.S.A.[3]
By its answer, the Union contended that (1) the operation of the transit companies affects interstate commerce within the meaning of the National Labor Relations Act, and thus, the labor relations involved are subject to such Act; (2) its members are not eligible for the County civil service program; (3) under the provisions of § 839.221, Fla. Stat., F.S.A., the government acquiring the utility is empowered to bargain collectively where the former owner maintains a substantial financial or operating control; (4) the County is without standing to raise the question concerning the right to make a collective bargaining agreement; and (5) under § 839.221, Fla. Stat., F.S.A., the County cannot lawfully acquire or operate the transit system without a collective bargaining agreement.
On December 19, 1961, the Union filed with the National Labor Relations Board a charge of unfair labor practices. However, no complaint was issued by the Board which had the following to say in this regard:
"We have concluded that in the present posture of the case the County is the *180 employer of the employees who are or will be engaged in the operation of the transferred transit lines; that the statutory exemption in Section 2(2) of the National Labor Relations Act is applicable; and that the sale and purchase arrangements between Pawley and Dade County do not require a different conclusion.
"However, as you know, there is presently pending litigation in the Florida State Court between the parties which also raises questions as to the status of the transit lines employees and their right to engage in collective bargaining and to strike over terms and conditions of employment, under State law. The outcome of this litigation may conceivably have an impact on the unfair labor practices charge filed by the Amalgamated.
"For that reason, and in order to permit a reexamination of the charge in the light of the final outcome of the State Court litigation and to avoid prejudicing the rights of the charging parties under the National Labor Relations Act's 6-month statute of limitations, the charge will not be dismissed at this time."
This determination was appealed by the Union to the District Court of the District of Columbia where the complaint was dismissed on the ground of lack of jurisdiction over the subject matter. This decision was affirmed by the United States Court of Appeals for the District of Columbia Circuit on June 13, 1963. Division 1267, Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees of America v. Ordman, 320 F.2d 729 (D.C. Cir.1963).
The Union has presented two points in its appeal: (1) The trial court erred in asserting jurisdiction; and (2) The trial court erred in holding that Florida law bars the County as transit employer from bargaining collectively and immunizes it against strikes.
The County maintains that the circuit court correctly held that it had jurisdiction of the controversy, and in addition presents two points in its appeal: (1) The trial court erred in holding that Mr. Pawley maintains a substantial financial or operating control in the County transit system; and (2) The trial court erred in holding that the members of the bus operators' union who accepted employment as county employees would not be included in classified civil service and other benefits.
The Union's first point raises the question of federal pre-emption. The Union has maintained both in the state and federal courts that all jurisdiction on the question of the relationship of the Union to the County is in the federal system. Their position is buttressed by the pronouncement of the Supreme Court of Florida in Scherer & Sons, Inc. v. International Ladies' Garment Workers' Union, Fla. 1962, 142 So.2d 290. The court there reaffirmed the principle that where a situation is "arguably subject" to the prohibitions or protections of the Labor Management Relations Act, 1947 (Taft-Hartley Act, Title 29 U.S.C.A. § 141 et seq.), the National Labor Relations Board is the appropriate forum to initially determine the presence or absence of federal jurisdiction.
The chancellor held that the situation in the instant case was not "arguably subject" to the provisions of the Taft-Hartley Act. He clearly felt that the case came within the exemption provided in § 152(2) of this Act.[4]
As has been related, the Union filed a complaint in the controversy at hand with the National Labor Relations Board. The *181 Board in its findings specifically found applicable the statutory exemption under § 2(2) of the National Labor Relations Act (quoted below as § 152(2) of 29 U.S.C.A.). The Union has not met the burden of demonstrating error in the determination of the chancellor which was to the same effect. Thus, the question has been reduced to a supposed violation of state law, and a state court is free to determine questions involved. Upon these facts we think that the court had jurisdiction to proceed with the cause.
We turn now to the Union's second point  that the trial court erred in holding that Florida law bars the county as transit employer from bargaining collectively and immunizes it against strikes. In the final decree the chancellor made findings on this issue. They are set out under numbers 3 and 4 at the beginning of this opinion, and are repeated here for clarity:
"3. Plaintiffs are not authorized by law to enter into a collective bargaining agreement with defendants and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause.
"4. Plaintiffs are not authorized to recognize as lawful any strike directed against them and would not be authorized to do so upon consummation of the contractual transaction evidenced by the record in this cause."
The chancellor also filed an extensive opinion in support of his final decree. We take the liberty of quoting extensively from that portion referring to the above-quoted findings:
"Therefore, having carefully considered all of the evidence in the case and the applicable law, the legislative history of Florida Statute 839.221, the intent of the Legislature, as manifest by the language of this statute, those facts generally known to the public at the time of the enactment of the statute, constitutional, statutory, and case law prevailing at the time of the enactment of the statute, and the arguments of able counsel of the parties in this case, the Court has firmly concluded the following:
"1. In the event the plaintiffs take over the bus companies upon the circumstances revealed by the evidence in this case, Florida Statute 839.221 would be inapplicable to any persons employed by the bus companies at the time of takeover. In other words, as the Court weighs the evidence, Mr. Pawley `maintains a substantial financial or operating control' within the meaning of Sub-Section (3) of that statute. Further, such persons who may be employed for so long a period as Mr. Pawley continues to maintain that substantial control would likewise be excluded from the operation of 839.221.
"2. Unless clearly authorized to do so by the enactment of legislation, the plaintiffs would not be authorized and are not now authorized to enter into collective bargaining agreements, within the labor relations meaning of the term, with the defendants.
"3. Unless clearly authorized to do so by the enactment of legislation, the plaintiffs could not recognize as lawful any strike against the plaintiffs by the defendants. In other words, the statute would be inapplicable to the employees, but there could be neither collective bargaining nor strike.
"The Court will now discuss its conclusions, listed as 1, 2, and 3 above, and in that discussion will construe 839.221.
"Whether or not it is ever actively exercised, the majority bondholder *182 maintains, through his trustee, substantial control  control at least equal to that of any elected or appointed official who may be involved in the operation of the buses. This substantial control  and I add, parenthetically, actually over the management company as well  is control maintained through the relationship of its trustee to certain individuals or organizations which themselves exercise substantial operating control. The control comes about through the method prescribed for appointment and removal of key figures in the operation.
"As to conclusions 2 and 3, you gentlemen are all familiar with the Miami Waterworks case. ([Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445], 26 So.2d 194 [165 A.L.R. 967]). The basic Florida Statute is recited in it. From a reading of that case and a close study of that statute that we are now construing (F.S. 839.221 does not employ the phrase `collective bargaining'), I am led to the conclusion that in Florida there can be no collective bargaining within the labor relations meaning of the term, and that there is no present authority for the plaintiffs to contract with the defendants.
"Florida law and, indeed, the undisputed law in every jurisdiction in this country, is that in the absence of clear, concise, direct legislative authority, unions and their members are denied the right to strike against the government, whether it be federal, state, county, or municipal. The profit system is missing in public employment, public employees owe undivided allegiance to the public employer, and the continued operation of public employment is indispensable to the public interest.
"The courts have said that as a general rule collective bargaining has no place in government service. The employer is the whole people. This is a government of law, not men. For the courts to hold otherwise than as I have just explained would be to sanction control of governmental functions not by laws but by men. Such policy, if followed to its logical conclusion, would inevitably lead to chaos.
"The defendants have urged throughout this case that in the event the control that is specified in Sub-Section (3) of the statute is maintained, that 839.221 actually is legislative authority to bargain collectively and to strike. Such is not the case. Authority to strike is not given by implication. Neither is the judiciary delegated the legislative authority to legislate the right to strike upon certain findings of fact before the judiciary. Neither is a private individual or a government corporation or a government entity, such as the Authority here, in position to grant or to deny that right through the avenue of some contractual provision. This is the fatal void in the defendants' case in regard to collective bargaining and the right to strike.
"Florida Statute 839.221, not being applicable to the defendants, they are in the exact position as they were in before the statute was passed; that is, no right to bargain collectively, no right to strike, because the statute simply has no applicability to them. They are excluded from the provisions of it under such circumstances as we have in this case.
"Therefore, there is nothing for them to fall back upon. But most important, the format of this statute that we are construing is to set up certain disqualifications for employment within the state, county, or municipality. The statute is basically a prohibition against employing certain persons or certain classes of persons.
"To construe its inapplicability to the defendants as breathing some legislative authority in them to strike is to *183 say that such could be done by indirection or inference, and such is not the law."
The Union urges that the Miami Water Works case (Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967), cited by the chancellor, is not applicable to the instant situation because the case dealt with government as employer in a venture in which there was no private investment or private control. The distinction is valid, but we do not think that it destroys the rationale of the chancellor's opinion. The chancellor correctly found that the Transit Authority was an instrumentality of the metropolitan government. The nature of the "substantial financial or operating control" found by the final decree to repose in Mr. Pawley is not such as to destroy the governmental character of the Transit Authority.
In support of a contrary conclusion, we are cited United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). It is urged that the United Mine Workers case stands for the proposition that to qualify for an exemption from the Norris-LaGuardia Act, the government must not only hold what amounts to full title and ownership of the enterprise in which it occupies the role of "employer", but in addition, must have "ultimate control." It is then urged that Florida should follow this construction in applying its own statute. We do not consider the Union's statement to be the holding of the cited case. It is clear from the facts stated that although utilizing the services of private managers, the Federal Government nevertheless had retained ultimate control. The holding, as we understand it, was that where the Government had seized actual possession of the mines and was operating them, the relationship between the Government and the workers was that of employer and employee. Thus, viewed, there is no conflict between the holding of the trial judge in the present case and that of the Supreme Court of the United States in the case cited. Nevertheless, we think it well to go a step further and point out that while there is no doubt that the record before us shows a substantial control in Mr. Pawley, still there is no evidence that he has the ultimate control over the transportation facilities involved.
Having determined that the circuit court had jurisdiction to enter the decree, and that the Union has not demonstrated error upon the court's application of the Florida law which prohibits collective bargaining by and strikes against the governmental entity, we must affirm the decree upon the appeal of Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America (No. 62-639).
The first point of the County's appeal challenges the court's finding that Mr. Pawley maintains a substantial financial or operating control in the transit system. The record contains abundant support for the chancellor's finding on this point.
The entire question of Mr. Pawley's financial and managerial control (or lack thereof) hinges upon his power to appoint and remove the trustees of the Dade County Transit System. This follows because (1) effectual managerial and financial control are in the hands of a management firm and a firm of consulting engineers, the approval of whose appointment by Mr. Pawley was both necessary and obtained; (2) prior to changing these two firms for others, approval of the trustees is required; and (3) Pawley can both remove and appoint the trustees at will. Therefore, through his power to control the trustees, Pawley has a substantial control of the transit system through the management firm and the consulting engineers.
The County's second point remains for consideration. Such point urges the trial court erred in holding that the members of the bus operators' union who accepted employment as county employees would not be included in classified civil service and other benefits. The chancellor's findings upon this issue are found in paragraph "2" of the portion of the decree quoted at the *184 beginning of this opinion. They are as follows:
"2. Plaintiffs are not required by law to offer employment to the members of the defendant union, and the members of the defendant union would not by operation of law (Sub-Section (4) of F.S. 839.221) be included in classified Civil Service and other benefit provisions and systems of Metropolitan Dade County, Florida, upon consummation of the contractual transaction evidenced by the record in this cause."
By virtue of his finding that the defendant union and its members are excluded from the operation of § 839.221, Fla. Stat., F.S.A., the chancellor excluded the members of the union from the benefit of subsection (4) thereof. (See footnote 2 for the section in full). Subsection (4) is as follows:
"(4) Upon the acquisition of any public utility system from a private person, firm or corporation by any state, county or municipal government, then and in that event the employees of such private person, firm or corporation other than executive or management staff, shall be eligible to be included in classified civil service and other benefit provisions and systems of that governmental unit."
The chancellor's conclusion is supported by the provision of Subsection "(3)" of § 839.221 which specifically says that where there is substantial private control the whole section shall be inapplicable.
But does the inapplicability of subsection "(4)" mean that these County employees cannot have the benefit of the County employees' classified civil service and other benefits of County employment? We do not so read subsection "(4)". The subsection directs that the employees of certain public utility systems shall be eligible for classified civil service. It does not by its terms prohibit the present union members from becoming eligible if they are by other provisions of law eligible. The Larger Counties Civil Service Law, Chapter 30255, Acts of 1955, Laws of Florida, as amended, (Article IV, Division 2 of the Code of Metropolitan Dade County), creates a civil service system in each county having a population of more than 450,000 and provides that:
"The classified service to which this law shall apply shall comprise all positions in the county service existing on January 1, 1956 or thereafter established, except the following: (Thereafter follows an enumeration of the 23 county positions and employees excluded from the classified service)" [Emphasis supplied].
Thus, all County employees in Dade County are required to be in the classified service (civil service) except those specifically excluded therefrom. No exclusion or exemption is made for personnel in positions which would be engaged in work necessarily incident to the operation of the County-owned transit system.
Moreover, the Metropolitan Dade County Transit Authority Ordinance (Ordinance No. 60-23), a local legislative enactment which the Supreme Court of Florida (in State v. Dade County, Fla. 1962, 142 So.2d 79) held the County Commission was lawfully empowered to enact, expressly provides:
"Section 2-164. RIGHTS OF EMPLOYEES OF TRANSIT SYSTEMS ACQUIRED BY COUNTY.
"Whenever the county acquires existing transit systems or facilities from a publicly or privately owned public utility, to the extent necessary or feasible for the economic operation of such facilities, all of the employees of such acquired transit system whose duties pertain to the facilities acquired shall be employed in comparable positions in the county service and the pay status, seniority, vacation and sick leave rights shall be preserved and maintained to *185 the fullest possible extent. All employees of the authority shall be deemed, considered or construed as county employees and shall be entitled to all the rights, privileges and benefits of county employees."
Furthermore, Section 4.05 of the Home Rule Charter of Government for Dade County, Florida, provides, in part, as follows:
"A. The Board of County Commissioners shall establish and maintain personnel and civil service, retirement, and group insurance programs. The personnel system of the county shall be based on merit principles in order to foster effective career service in county employment and to employ those persons best qualified for county services which they are to perform.
* * *
"C. Except as provided herein, Chapter 30255, General Laws, 1955, as it exists on the effective date of this Charter, shall remain in effect until amended or changed by ordinance of the Board of County Commissioners adopted by two-thirds vote of the members present after recommendation from either the Personnel Advisory Board or the County Manager."
In addition, Chapter 122, Florida Statutes, F.S.A., provides for a compulsory retirement system for all state and county employees, and requires the county to deduct six percent from each salary check of every county employee for payment into the State and County Officers and Employees Retirement Fund. The provisions of this general law are applicable to all employees of Dade County, including those employed by the County in connection with the operation of the county-owned transit system.
Consequently, all persons who become employees of Dade County, whether they are members of the Bus Operators Union or not, immediately become compulsory participants in the state and county retirement program.
We therefore hold that paragraph numbered "(2)" of the final decree is erroneous, and upon remand the chancellor is directed to enter an order amending the final decree by striking therefrom said paragraph and entering an amended provision in accordance with this opinion. The chancellor may in his discretion take additional testimony and evidence as he finds necessary to enter an appropriate declaration of the rights of the parties upon the issue of the rights of the union members to classified civil service and other benefits.
Affirmed in part and reversed in part and remanded.
NOTES
[1] It should be noted that appeal 62-639 was originally filed in the Supreme Court. Appeal 62-137 was filed here and was held in abeyance pending ruling in the Supreme Court on the jurisdiction of that Court. Subsequently appeal 62-639 was transferred to this Court and then the two appeals were consolidated by order of this Court.
[2] The validity of the various contract documents and revenue bonds was upheld by the Circuit Court and affirmed by the Supreme Court of Florida in State v. Dade County, Fla. 1962, 142 So.2d 79.
[3] § 839.221, Fla. Stat., F.S.A.

"Governmental officers and employees; prohibited participation in strikes or membership in organizations that assert right to strike against government employer
"(1) No person shall accept or hold any office, commission or employment in the service of the state, of any county or of any municipality, who:
"(a) Participates in any strike or asserts the right to strike against the state, county or any municipality; or
"(b) Is a member of an organization of government employees that asserts the right to strike against the state, county or any municipality, knowing that such organization asserts such right.
"(2) All employees who comply with the provisions of this section are assured the right and freedom of association, selforganization, and the right to join or to continue as members of any employee or labor organization which complies with this section, and shall have the right to present proposals relative to salaries and other conditions of employment through representatives of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any such employee to join or refrain from joining a vocational or a labor organization.
"(3) In the event that any public utility owned and operated by a private person, firm or corporation is taken over on or after May 1, 1959, by the state, a county or a municipality but in fact said person, firm or corporation maintains a substantial financial or operating control, said persons then employed or to be employed shall be excluded from the operation of this section.
"(4) Upon the acquisition of any public utility system from a private person, firm or corporation by any state, county or municipal government, then and in that event the employees of such private person, firm or corporation other than executive or management staff, shall be eligible to be included in classified civil service and other benefit provisions and system of that governmental unit."
[4] § 152(2) provides:

"The term `employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."