279 So.2d 23 (1973)
CANNERY, CITRUS, DRIVERS, WAREHOUSEMEN AND ALLIED EMPLOYEES OF LOCAL 444, Etc., et al., Petitioner-Plaintiff,
v.
WINTER HAVEN HOSPITAL, INC., Etc., Respondent-Defendant.
No. 43157.
Supreme Court of Florida.
June 6, 1973.
*24 Thomas A. Capelle of Hardee, Hamilton & Douglas, Tampa, for petitioner-plaintiff.
William E. Sizemore, of Shackleford, Farrior, Stallings & Evans, Tampa, for respondent-defendant.
BOYD, Justice.
This cause is before us on Petition for Writ of Certiorari to the District Court of Appeal, Second District. That Court has certified that its decision, reported at 269 So.2d 421, is one passing upon a question of great public interest, giving this Court jurisdiction under Article V, § 3, of the Constitution of the State of Florida, F.S.A.
The facts, as reported by the District Court, are as follows:
"This appeal grew out of a union organizational drive at Winter Haven Hospital, appellee. It is alleged that several employees of the hospital, including these appellants, Hearn, Rice and Scoles, had signed authorization for Local 444 of International Brotherhood of Teamsters to represent them in labor matters with the hospital. The organizational activities came to the attention of the hospital administration and appellant Hearn was discharged. There is controversy as to whether or not he was discharged as a result of organizational activities or because he was away from his duty station, thereby impairing patient care. Scoles at the same time was threatened with discharge because of alleged union activities during working hours but was never actually discharged. A patient, an official of another teamsters local not a party to this appeal nor to the suit in the trial court, was discharged as a patient, but was readmitted the next day and denied any involvement in the organizational drive.
"The complaint alleged several actions on the part of the hospital interfering with and discouraging union organization and sought temporary and permanent injunctive relief from these allegedly coercive practices. Following testimony before the trial judge an order was entered dismissing the union for lack of standing; denying Hearn's request for an injunction to compel his reinstatement and dismissing him from the suit and allowing Rice and Scoles to mantain a class action but denying the temporary injunction. This appeal followed."[1]
The primary question before the District Court was whether a union has standing to seek injunctive or other relief on behalf of employees against an employer which is exempt from the National Labor Relations Act, where it is alleged that the management illegally coerced union members while they were engaged in union organizational activities. The District Court denied relief upon the authority of Miami Laundry Company v. Laundry, Linen, Dry Cleaning Drivers, Salesmen, and Helpers, Local Union No. 935,[2] which held:
"We hold that the rights, privileges and immunities granted and guaranteed by our Declaration of Rights .. . are protection and guarantees which are accorded, in a purely personal and non-assignable manner to the employees as individual citizens."[3]
Based upon this authority, the District Court affirmed the trial judge's dismissal of the union for lack of standing. The District Court noted, however:
"Mature union activities, economic conditions, and judicial responsiveness may have made the time propitious for allowing the union standing to bring suit for injunctive relief on behalf of the employees, such as in the instant case; but our Supreme Court has not, as of this date, so held."[4]
*25 Accordingly, the following question was certified to this Court: whether a labor organization engaged in an organizational campaign at the place of business of an employer not subject to National Labor Relations Board jurisdiction has "standing" to seek injunctive relief against asserted employer coercion directed at the employee members in violation of Article I, Section 6, of the Declaration of Rights.[5]
Contrary to the views expressed by the District Court,[6] the answer to this question is "yes".
The question of whether a labor organization has "standing", during an organizational campaign, to seek judicial enforcement of the rights guaranteed its members by Article I, § 6, of the Constitution of the State of Florida frequently surfaces in trial court litigation. In the instant case, the particular question which confronted the trial judge was whether Local 444 should be allowed to seek injunctive relief against the hospital, where it was alleged that the hospital had discriminated against and coerced certain of its employees in the exercise of their rights under said constitutional provision.
Article I, § 6 of the Constitution of the State of Florida provides, in part:
"... . The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged... ."
Section 447.03 of the Florida Statutes, 1971, F.S.A., provides:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."
Section 447.09(11) of the Florida Statutes, 1971, F.S.A., provides, in part:
"It shall be unlawful for any person... . [t]o coerce or intimidate any employee in the enjoyment of his legal rights, including those guaranteed in § 447.03... ."
Generally, as in the instant case, the question of standing is usually raised by a motion to dismiss. In dismissing Local 444 from the suit, the trial judge cited this Court's 1949 decision in Miami Laundry Co. v. Laundry, Linen, Dry Cleaning Drivers, Salesmen & Helpers, Local Union No. 935, supra. While this case did indeed answer the question of standing in the negative, the 1949 Court cited, as its only authority, the previous case of Miami Water Works Local 654 v. City of Miami,[7] for the proposition that "these provisions [the predecessor of Article I, § 6] were contained in the Declaration of Rights and in the Florida Statutes as personal protection to employees and ... the question of whether their rights had been infringed was not one which could be raised by the Union".[8]
The Miami Laundry Co. holding, resting as it does solely upon the 1946 decision in Miami Water Works, would appear to have lost its status as controlling authority, for the reason that Miami Water Works was explicitly disaffirmed by this Court in Dade County Classroom Teacher's Association, Inc. v. Ryan:[9]
"The cases of Miami Water Works Local No. 654 v. City of Miami [157 Fla. 445, 26 So.2d 194] ... and Dade County v. Amalgamated Assoc. of Street Electric Ry. & Motor Coach Employees [Fla.App., 157 So.2d 176] ... were decided prior to the constitutional revision of 1968... .
"The holdings in the two cited cases only went so far as to construe the law then *26 existing and did not pass upon later modifications in the law relating to collective bargaining rights of public employees."[10]
If the Miami Water Works case falls, so must Miami Laundry Co.  not only because both cases were decided under the predecessor section to Article I, § 6, but also because those cases represent an outdated view of the representative and social-institutional function of a labor organization.
There is, therefore, apparently no current Florida decision on the issue of standing, at least subsequent to the 1968 constitutional revision. We are thus concerned only with a general grant of "capacity to sue", conferred by Section 447.11, Florida Statutes, 1971, F.S.A.:
"Any labor organization may maintain any action or suit in its commonly used name and shall be subject to any suit or action in its commonly used name in the same manner and to the same extent as any corporation authorized to do business in the state. .. ."
Time and time again the courts of this State have held that a labor organization is subject to suit in its commonly-used name for such varied purposes as enjoining its members from picketing an employer's business establishment,[11] enjoining violence on its members' part,[12] and enjoining the union from acting as a collective bargaining representative.[13]
The anachronistic character of the Miami Laundry Co. holding is more apparent from its disuse than its application. It is generally true that only where specific objection has been made is a labor organization excluded from a law suit for lack of standing; where no objection is voiced, the union is allowed to remain in the litigation. For example, in Dade County Classroom Teacher's Association, Inc. v. Ryan, supra, one of the original petitioning parties was Local 1875 of the American Federation of Teachers; subsequently, the Dade County Classroom Teachers' Association was permitted to intervene.[14] The standing doctrine of Miami Laundry Co. has thus never served a continuing judicial function, but, rather, has only been occasionally brandished as an employer's weapon at the point when its battle against a union enters the judicial arena.
In its opinion in the instant case, the District Court of Appeal, Second District, intimated its concurrence with the position of Local 444 with respect to the standing issue.[15] We agree with the sentiment of that opinion, that the time to recede from this Court's previous holding in Miami Laundry Co. is upon us, and we expressly *27 so recede. As this Court held in Shingleton v. Bussey:[16]
"Public policy is a molding device available to the judicial process by which changing realities and the attending manifested rules of fair play may be incorporated into our corpus juris... ."[17]
"It can hardly be denied that one of the fundamental goals of modern procedural jurisprudence is to secure a method of providing efficient and expeditious adjudication of the rights of persons possessing adverse interests in a controversy... ."[18]
In the instant case, if all of the employees were to be discharged for their organizational activities, and, if the union were not given standing to sue on their behalf, it is questionable whether the employees would be afforded an "efficient and expeditious adjudication of their rights" under Article I, § 6, and the controlling statutes.
Accordingly, the question certified is answered in the affirmative, and we hold that, where it represents employees, a labor organization, engaged in an organization campaign at the place of business of an employer not subject to National Labor Relations Board jurisdiction, has "standing", on behalf of employees represented, to seek injunctive relief against asserted employer coercion directed at employee-members in violation of Article I, § 6, of the Declaration of Rights. The Decision of the District Court of Appeal is quashed and the cause remanded for further proceedings consistent herewith.
It is so ordered.
CARLTON, C.J., and ADKINS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 269 So.2d at 422.
[2] 41 So.2d 305 (Fla. 1949).
[3] Id. at 308.
[4] 269 So.2d at 423.
[5] Id.
[6] Id. at 422-423.
[7] 157 Fla. 445, 26 So.2d 194 (1946).
[8] 41 So.2d at 307.
[9] 225 So.2d 903 (Fla. 1969).
[10] Id. at 905-906.
[11] See, e.g., International Longshoremen's Ass'n Local 1416 v. Eastern Steamship Lines, Inc., 211 So.2d 858 (Fla.App. 3rd 1968); Hescom, Inc. v. Stalvey, 155 So.2d 3 (Fla.App. 1st 1963).
[12] See, e.g., International Typographical Union v. Ormerod, 59 So.2d 534 (Fla. 1952); Moore v. City Dry Cleaners and Laundry, 41 So.2d 865 (Fla. 1949).
[13] See, e.g., Hettenbaugh v. Airline Pilots' Assoc. International, 52 So.2d 676, 678 (Fla. 1951). In sustaining the employer's right to sue the Airline Pilots' Association, the Court stated, in part:

"... . The idea of an entity in this country that cannot be reached by process runs counter to every precept of justice.
"It is therefore our opinion that the association is the agent of the plaintiffs, that it is bargaining and acting for them and that the process and service were sufficient to give the Circuit Court jurisdiction over them."
[14] In Bassett v. Braddock, 262 So.2d 425 (Fla. 1972), the Dade County Classroom Teacher's Association was again allowed to intervene as a party.
[15] See note 4, supra.
[16] 223 So.2d 713 (Fla. 1969).
[17] Id. at 715.
[18] Id. at 718.