QUESTIONS: 1. What authority is given a department head or secretary under a type two transfer? 2. Can the secretary of the Department of Professional and Occupational Regulation act as final approving authority of an individual to be employed as executive director (coordinator) for each of the examining and licensing boards?
SUMMARY: The authority of a department head under a type two transfer is limited to those ministerial services delineated in ss. 20.06 and 20.30, F.S. The authority of the various licensing and examining boards has not been repealed, altered, limited, or divested by the Governmental Reorganization Act or any other statute. Appointment, employment, and compensation of the executive director and other staff personnel are vested in the respective licensing boards and the secretary of the Department of Professional and Occupational Regulation has no statutory authority to finally approve the appointment or employment of an executive director of a licensing and examining board assigned to that department. A type two transfer is one of the methods used by the legislature in reorganizing the executive branch of state government by transferring specified agencies, programs, and functions to the departments, commissions, or offices created or referred to in the Governmental Reorganization Act of 1969, Ch.20, F.S. Chapter 69-106, Laws of Florida [s. 20.06(2), F.S.], defines a type two transfer, in part, as: . . . the assigning to any department of an examining and licensing board which has as a function the setting of standards for, or the regulation of, an occupation or the examination, licensing or certifying of practitioners of such occupation. . . . The above statute also delineates the authority of the receiving and transferring agency as follows: For any agency assigned a type two transfer, the collection of license fees and other revenues, payroll, procurement, and related administrative functions shall be exercised by the head of the department to which the board is assigned. Any agency assigned by a type two transfer shall independently exercise the other powers, duties, and functions prescribed by law, including but not limited to rule making, licensing, regulation, and enforcement. . . . (Emphasis supplied.) It is a general principle of statutory construction that the mention of one thing implies the exclusion of another. This principle is known as expressio unius est exclusio alterius, Peeples v. State, 35 So. 223 (Fla. 1903); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952). Hence, when a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned. Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944). Section 20.06(2), F.S., clearly delineates those functions designated to the department head as being "collection of license fees and other revenues, payroll, and procurement." Therefore, based on the above doctrine of statutory construction, the exercise of authority in other areas not designated must be construed as being excluded from authority of the department head. The specific enumeration of duties in s. 20.06(2), F.S., is followed by the terminology "and related administrative functions shall be exercised by the department head to which the board is assigned." Such language must be construed in the light of statutory construction. Ejusdem generis is a familiar aid to statutory construction. This principle states where the enumeration of specific things is followed by a more general word or phrase, the general phrase is construed to refer to a thing of the same kind or species as included within the preceding limiting and more confining terms. State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381
(Fla. 1958). Similarly, in a statute where general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation, and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated. Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918); LRA 1918E639; Children's Bootery v. Sutker, 107 So. 345 (Fla. 1926). Furthermore, a statute granting authority to public officers to proceed in a particular way or only upon specific conditions implies the duty not to proceed in any manner than that which is authorized by law. First National Bank of Key West v. Filer, et al., 145 So. 204 (Fla. 1933); White v. Crandon, et al., 156 So. 303 (Fla. 1934); 67 C.J.S. Officers ss. 103 and 108. It does not appear that the appointment or employment of staff personnel falls within the classifications enumerated in the statute. Therefore, the appointment or employment of personnel staff does not appear to be within the authority of the department head in exercising his authority over related administrative functions. The language noted in s. 20.06(2), F.S., clearly delineates the authority of the department head. This authority is limited to the collection of fees and other revenues, payroll, procurement, and related administrative functions. The legislature has given licensing and examining boards unfettered control and supervision in regulating their activities. This can be gleaned from the fact that each examining and licensing board may provide for its own investigative and legal services, prepare its examinations unless otherwise provided by law, and continue to have supervision and control of such funds collected in trust in connection with its licensing, certifying, and related activities. Section 20.06(2), F.S. Further, mandatory language was used in delegating authority to transferring agencies (examining and licensing) in implementing their authority — "shall independently exercise the other powers, duties and functions as prescribed by law . . . ." Section 20.06
(2). Therefore, I come to the conclusion that the authority of the department head under a type two transfer is limited to those ministerial services delineated in s. 20.06(2), F.S. As to the second question, s. 20.30(9) and (10), F.S., designates those examining and licensing boards assigned to the Divisions of Professions and Occupations, respectively, in the Department of Professional and Occupational Regulation by a type two transfer. Each statute creating a licensing and examining board transferred to the Department of Professional and Occupational Regulation has a provision regarding the duties, powers, compensation, hiring, or appointment of staff personnel. The basic tenet running through those statutes is that each examining and licensing board has the authority to appoint or employ staff personnel, including but not limited to executive directors, secretaries-treasurers, administrative assistants, and secretarial staff as may assist the board in doing and performing all its powers, duties, and obligations. These statutes also prescribe and vest varying degrees of authority and responsibilities in administrative personnel for carrying out the various activities of the boards. The authority of the department head must be viewed in conjunction with the enabling statutes of the respective boards and commissions assigned under such transfer. The respective enabling acts of the various boards either provide the discretion ("may") to appoint or employ executive directors and other staff personnel or they direct ("shall" or "will") the boards to do so (e.g., ss. 458.041, 459.051, 465.041, 466.08, 470.02, 471.13, 471.14, 473.06, 476.09, 477.20, and 478.081, F.S.) and to discharge at the boards' pleasure such executive directors or executive secretaries. Section 20.06(2), F.S., does not purport to expressly amend or repeal any of the enabling acts or any part or section. The question whether s. 20.06(2) effects an implied repeal of the existing enabling statutes is one of legislative intention in the enactment of the alleged repealing act. State v. Gadsden County, 58 So. 22 (Fla. 1912), State ex rel. Worley v. Lee, 168 So. 809 (Fla. 1936), State ex rel. Myers v. Cone,190 So. 698 (Fla. 1939), Re Wade, 7 So.2d 797 (Fla. 1942). The law does not favor repeals by implication, State v. Sarasota Co.,74 So.2d 542 (Fla. 1954). In the absence of a positive repugnancy between two statutes, clear legislative intention must be present before a repeal will be implied. The mere fact that two statutes affect the same subject matter, when it is not clear that the latter was designed to prescribe the only governing rules, is not sufficient, State ex rel. Gonzalez v. Palmes, 3 So. 171 (Fla. 1887); New Smyrna v. Mathewson, 152 So. 706 (Fla. 1934); see AGO's 071-395 and 073-331. Amendments by implication are also not favored and will not be upheld in doubtful cases. Miami Water Works Local #654 v. City of Miami, 26 So.2d 194 (Fla. 1946); 165 A.L.R. 967. Jet Air Freight v. Jet Air Freight Delivery, Inc., 264 So.2d 35
(1972). A later statute will not be held to repeal a former one unless there is positive repugnancy between them or the latter was clearly intended to prescribe the only rule which should govern subject treated, City of New Smyrna, supra. Although s. 20.06(2), F.S., would be the latest expression of legislative will, there appears to be no inconsistency or repugnancy between s. 20.06(2) and the pre-existing enabling statutes of the various examining and licensing boards that could be construed as repealing or modifying any part or section by implication. In fact, the authority of the department head under s. 20.06(2) is limited to certain prescribed functions, and pursuant to our discussion of the rule expressio unius est exclusio alterius in question 1, the department head is precluded from exercising any authority not specifically within the authority enumerated. The invariable rule of construction regarding repealing statutes by implication is that earlier acts remain in force unless the two are manifestly inconsistent with and repugnant to each other, Sanders v. Howell,74 So. 802 (Fla. 1917). Implicit in your letter was the question of your authority under the "procurement" provision of s.20.06(2), F.S., to approve or disapprove the appointment or employment of executive directors or secretaries for the various licensing and examining boards of your department. Procurement is defined to be the act of procuring, obtaining, bringing about, or effecting, etc., 34 Words and Phrases Procurement. The term means and is the act of obtaining or acquiring or bringing about something for or to someone else and involves the principle of agency, i.e., acting as an agent of another to obtain or bring about a commodity, service, or result for the advantage or benefit of the principal. As used in this context, procurement might be an act of recruiting personnel for the licensing boards. However, the approval or disapproval of the individuals so obtained or recruited for the job and the act of hiring, paying, controlling, and discharging such individual so procured lie with the principal and not the agent, unless the principal has delegated such authority to his agent or procurer. Here, any such delegation of power has to be made by the legislature to the department by statute. In the context in which procurement is used in s.20.06(2), F.S., it appears that it is used in the sense of the department obtaining supplies and materials, bringing landlords and boards together on leases and various other contracts, or finding such leases and contracts for the boards. This would be a part of the department's function of ministerially servicing and supporting the boards, not actually exercising any of the powers, duties, and functions of the boards, and not vetoing any of the official actions of such boards authorized or required by law. Thus, if the department head recruited executive directors or secretaries for the various boards, he would have no authority to approve or disapprove of the appointment or employment of such person since this is the exclusive authority of the various boards. Therefore, the procurement provision of s. 20.06, F.S., must be construed as providing no authority for the department head's final approval of the appointment or employment of the executive directors or other staff personnel of the respective examining and licensing boards. In a related question requested by a previous secretary of the Department of Professional and Occupational Regulation regarding the authority of the secretary to review and evaluate the performance of executive directors of the examining and licensing boards, my predecessor determined: . . . if the agency has the right and the duty to spend its funds which have been retained by the agency pursuant to its budget, then the agency would have the right and the duty to employ and discharge employees of that agency and the Secretary of the Department, having no such authority over agency employees, would consequently have no authority either to review or evaluate the performance of the executive directors of the examining and licensing boards. (Attorney General Opinion 070-5.) Section215.37, F.S. (1972 Supp.), in part provides that each examining and licensing board shall be financed solely and individually from income accruing to it from fees collected by the Bureau of Records Administration of the department and appropriates all such moneys to each of such licensing boards; and it further provides that all salaries and expenses shall be paid as budgeted after the approval thereof by the Department of Administration. In s. 20.30, F.S., creating the Department of Professional and Occupational Regulation, it is clear that the legislature intended to narrowly proscribe departmental activities. The decision to place the Division of Professions and the Division of Occupations directly under the department head rather than independent division directors; the discretionary authority given licensing and examining boards in accepting or utilizing certain services provided by the department; and the limited administrative functions given the department indicate the legislative desire to allow agencies within the department wide latitude in carrying out their statutory powers, duties, functions, and responsibilities independently of the department. It appears to be clear legislative intent that the authority of the secretary of the Department of Professional and Occupational Regulation be limited to the issuance of licenses, collection of fees, establishment of a uniform renewal license form for all boards and commissions, establishment of renewal and delinquency periods with the concurrence of the boards and commissions affected, and maintenance of nonconfidential records. Section 1, Ch. 73-97, Laws of Florida [s. 20.30(5), F.S.]. Applying the principle of expressio unius est exclusio alterius, the department head would be precluded from exercising authority over other administrative functions, including the approval or disapproval of executive staff because this authority is specifically enumerated by statute. If a particular power is not expressly conferred or cannot be fairly implied from powers expressly conferred, it should not be exercised. State v. Fowler, 105 So. 733 (Fla. 1925); Ideal Farms, supra; City of Pensacola v. Fillingim, 46 So.2d 876
(Fla. 1958); AGO's 073-374, 074-37 and 074-49. Moreover, statutory authority given to administrative officers must be exercised in accordance with the requirements of controlling provisions and principles of law. Edgerton v. International Company, Inc.,89 So.2d 488 (Fla. 1956). Based on the foregoing discussion, I come to the conclusion that s. 20.06(2), F.S., has not expressly or impliedly repealed, altered, or modified the enabling statutes of the respective licensing and examining boards within the Department of Professional and Occupational Regulation. Therefore, the authority to appoint, employ, and compensate the executive directors and other staff personnel for the respective licensing and examining boards in said department is vested in such licensing and examining boards, and the secretary of the department, having no authority over the personnel of such agencies, has no authority to finally approve the appointment or employment of an executive director of a licensing or examining board.